Nelson v. U.S. Good morning, counsel. Thank you. May it please the court, counsel, Charles Rabinowitz for the plaintiff and appellant Stephen Nelson. I'd like to reserve up to five minutes for rebuttal. All right. As the court knows, Mr. Nelson was a marine diesel technician who worked for a subcontractor on this job, and his job was to overhaul large marine diesel engines. And the overhauling involved taking apart the engine, cleaning the parts, repairing, replacing worn parts, and rebuilding the engine. And as he and his two co-workers were leaving the vessel, the Oscar Dyson, the NOAA vessel, one evening in November of 2017, the gangway just suddenly broke in half and collapsed, threw him to the ground 10 to 12 feet, and he was injured. And we know why the gangway collapsed. It collapsed because the welds to the upper part of the gangway were defective. They didn't fuse. There were gaps in the weld. And we also know that this could have been easily prevented by a load test done before the gangway, after the gangway was manufactured and before it was put in use. And load tests are very common. Everybody agreed, both the plaintiff's witnesses and the defense witnesses, agreed that a load test should have been done. And the load test is the only test that can really determine whether the welds are solid because once the welds are completed, there's a weld cap over it, and you can't see it. And it's just not practical to X-ray every single weld on a gangway. So the load test, and the load test is really simple. I described it in pages 21 through 24 of the opening brief, and there were photographs of the load test and what it involves. And it's really kind of refreshingly, from my standpoint, really refreshing. It's such a simple test. You don't have to click mouses. You don't need a computer. It's just simple mechanics. You don't have to know anything about algorithms. You put it up there. You measure things. If the deflection or the sag exceeds a certain amount, it flunks. And if there are any cracks in the welds, it flunks. And then you go back and you re-weld it, and you retest it again to make sure it's safe. Everything that supports human beings in society or transports human beings, the elevator in this building had to be load tested to make sure it could support a certain weight before it's put into use. Cars. I could not imagine General Motors or Ford or Chrysler, Fiat, or whatever their name is now, I could not imagine them putting cars on the road that didn't have the brakes and the airbags tested. General Motors does indeed do tests like that, I would think, but it doesn't follow that the person who buys the car needs to do a test. And here I think the evidence was, or at least from some of the government's witnesses, that manufacturers of gangways might do a load test, but that there isn't a duty, and it's not a common practice for the vessel owner to do a periodic load test. So what do you do with that evidence? No, the vessel wouldn't do it. The vessel would have somebody else do it. The vessel isn't really equipped to do a load test. None of the vessels are. They have other people do it. For example, one of the ways— Regardless of who does it, that it's not something that you do regularly once it's put into service, that you might do a visual inspection. But, I mean, the district court found that there isn't an ongoing duty to do these kinds of tests. So I think you need to convince us that that determination by the district court was clear error, don't you? Excuse me? Isn't there a factual finding by the district court that it's not industry practice to periodically do these kinds of tests? No, you don't have to do it periodically, but you have to do it before it's put into use because you need to know the load capacity, and you need to make sure that the gangway is going to comply with its intended use. But the district court found there was no duty to do that either, didn't it? The district court made no findings at all on whether an initial load test should have been done. It made findings that it didn't have to be done every five years thereafter. But, I mean, it implicitly rejected your argument. I mean, because you said the government was negligent because there wasn't a load test done before this was put into service. And, you know, in rejecting the ultimate conclusion of negligence, it necessarily rejected that part of your argument, didn't it? That's correct. Okay, so why was that? And there was some evidence from the testimony from Mr. Fluke that seems to support that. So why was that clearer? It was, well, I'm hoping I'm understanding the question correctly. The Rule 52A requires findings of fact on facts, special findings of fact, and the judge made no findings of fact at all on whether an initial load test was, the failure to do it was negligence and caused the injury. And everybody agreed, excuse me, every expert agreed that a load test should have been done. It was practical. SOLAS requires it. Safety of Life at Sea Convention requires it. And there's no reason why NOAA shouldn't have followed it in this situation. But the district court, I mean, the district court did address that point, right? The district court concluded that SOLAS didn't apply in this context, right? It said that SOLAS didn't require the five-year load testing. And it never said that SOLAS, it said that SOLAS didn't apply to the five-year load testing. And that's, but the five-year load testing wasn't the main issue. The main, in fact, we don't even know when this gangway was built. We don't know when it was, NOAA doesn't know when it was built. Your complaint, or your faulting of the district court's analysis, it's the failure to make a specific finding regarding the initial load test, right? It did not make findings as to the initial load test. Now, if we conclude that the duty for making the initial load test lies with the manufacturer, did the district court still then have to make a specific finding on the initial load test? Yes, it did. That was one of the main, that was the main claim for negligence in this case. And the five-year load testing, if the initial, if it passes the initial load test, this gangway should last. Even if the duty to arrange for the initial load test is with the manufacturer and not with the government, not with the United States? The initial load test, I'm having a little problem understanding things, but the initial load test should have been done and would have prevented this injury. Whose responsibility was it to arrange the initial load test? NOAA should not have accepted this vessel without an initial load test. They should have sent it back to the manufacturer. But the manufacturer actually tested it before it put it out. That's the standard, that the gangway is tested by the manufacturer. And in this case, the record shows that the manufacturer had tested the gangway sometime around 2013 or something like that. So are you suggesting that after that initial test by the manufacturer, the United States should have, every so many years, conducted a deflection test like you described in your briefing? They shouldn't have put this into operation without an initial load test. And when they realized there was no plating on the gangway and it had not had an initial load test, they should have arranged for one through a company like Vanport Marine or some other company that does this kind of thing. It knows what they're doing. But the district court did address that point and said that there wasn't a custom in practice to require records as to, you know, when the testing was done, right? I'm having a little problem understanding the court, I'm sorry. There should have, if there was no initial load test, NOAA should have not put it into effect without having it load tested to make sure it was safe. Because there was no initial load test done. The court found that. But the court never found whether that was negligent or not. Well, the court found, the court made a specific finding that the United States had no duty to load test the gangway once it was in use. Because the expert testimony explained that the manufacturer, not the downstream user in this case, which is the United States, is the entity responsible for conducting the initial load test. Well, that assumes that it was initially load tested. It wasn't initially load tested. If it had been initially load tested, the court would have at least some findings to suggest that it didn't have to be load tested every five years. But if it's not initially load tested and it's put in use, that doesn't mean you don't have to load test it. It should have been load tested before it was put in use. And the other thing I want to add is the gangway, NOAA got rid of the gangway before anybody had a chance to examine it. Even their own expert said that she would have made a much better decision, a much more informed decision, if she had had the original gangway to evaluate to determine whether there would have been cracks in the welds when they inspected it. And when they inspected it a month before and did this supposedly thorough inspection in Kodiak, before the vessel moved to Newport, Oregon for the overhaul, they had notes of this. They put it in the computer, they're gone. The bosun on the vessel kept handwritten notes that he did the inspection. He threw them away. This was a couple of months, this was nearly two years after we filed the case, he threw them away. He should have sent them to the U.S. Attorney's Office right away and they, of course, would have been produced. But we don't even know, there should have been a presumption. So every time there's an accident in a U.S. vessel, every time there's an accident that causes personal injury to someone, the United States has a duty to gather evidence and send it to the U.S. Attorney's Office without any notice of, I mean, here there was no notice of retention of evidence. You know, a lawyer didn't contact the United States, you know, via letter and say, I intend to file a lawsuit, please preserve this gangway. I mean, the lawsuit was filed, in essence, on the eve of the statute of limitations running. Well, they didn't keep, they threw them away, the records. We don't even know if he did the inspection. And the evidence was the inspection was done two different ways. One, Mr. Macayo, who operated the forklift, said it was done one way. Mr. Harris said it was done another way. Mr. Macayo said the way Mr. Harris did it was unsafe, the way he said he did it. And the way that Mr. Harris, the way Mr. Macayo said that Mr. Harris did it was inefficient because the key welds are under the gangway, they're not on the side. And what should have been done is they should have just taken the gangway, put it on its side, and then, you know, you can get down, kneel down, and look very, very carefully at the welds. But that wasn't done. Counsel, you're down to two minutes. I know you wanted to save some time. Thank you. Good morning, Your Honors. May it please the Court, Eric Kaufman Cohen from the Department of Justice on behalf of the United States. I think the justices got it correct. If there is a duty to load test a gangway, it's to the manufacturer. And the only testimony that was given was given by a plaintiff's expert, and where the plaintiff's expert, Captain Deary, said that the manufacturer should provide a plaque, load test, date of manufacture, and the like. He used the word should, not must, not required to. He used the word should. The government's expert, Mr. Dolan, whose credentials were specifically called out by Judge Hernandez, his over 40 years of experience in the industry, the fact he rose to be the vice president of the American Bureau of Shipping, testified that, yes, the manufacturer takes a prototype and does a load test. It takes one. It doesn't load test every gangway that it manufactures. It takes a prototype. Prototype passes it. If the owner wants documentation of the load test, the owner can ask for it. He didn't say they must ask for it. There's no custom or practice that requires a ship owner to request a load test before it's put into use. There's no law and there's no regulation that requires it. And what this comes down to is a battle of the experts, exactly what a trial court should do, weigh the testimony of competing expert opinion and decide, based on credibility, who is more credible and what is more likely the outcome. Judge Hernandez clearly took the opinion testimony of the government's expert, Mr. Dolan, the chief, not only that, but Charles Fluke, the NOAA inspector, who spent 30 years in the Coast Guard and never once inspected a gangway, never once asked to see a gangway file. He took that testimony and weighed it against Captain Deary, who spent eight years in the Coast Guard, seven years behind a desk, and one year on a cutter. And he determined that based upon the testimony of those people, the United States conducted a reasonable inspection of the gangway and did not breach its duty under CINDIA and under this court's ruling in the Murray case. Plaintiff cites no law. There's no law in his brief about what is the standard of care for a government vessel to workers aboard its ship. Judge Hernandez specifically said the government vessel does not have to comply with SOLAS. Not only that, the vessel doesn't go on international voyages. That's why SOLAS doesn't apply. It doesn't apply just because it's a government vessel. No vessel that does not undertake international travel is required to follow SOLAS. That's what he decided, and that's what Your Honor pointed out. SOLAS doesn't apply to the Oscar Dyson, one, because it's a government vessel, and two is because it doesn't undertake international voyages. This is clearly a case where the district judge ruled on the credibility of all the witnesses and determined the United States did not breach its duty of care under CINDIA, nor did it breach it under Murray, this court's decision in Murray, which cited to the Reed case, which is so similar to this case, it's almost a match. They went through the discussion of what Reed did and why the court in Reed found that it was a reasonable inspection. And the court, if you go back to the standard of care under Rule 56, it says a failure to comply with Rule 52A does not require reversal unless a full understanding of the question is not possible without the aid of separate findings. Here the record is clear. There's witness testimony. There is discussions about how NOAA goes about doing its fleet-wide inspection of its gangways. It lays out the applicable law, which is very important in this case, and it came to its conclusion that the United States did not breach its duty of care under CINDIA to Mr. Nelson. I don't see any reversible error there. It says, and even if you assume that he should have gone back and said, oh, and by the way, you didn't have to do an initial load test. The record from the trial court supports the finding of no negligence on behalf of the United States. And I'm willing to take some questions from the court if they have any. Thank you, Your Honor. We have your argument. Thank you. I think it was unanimous among all of the witnesses that a load test, an initial load test should have been done, and it was safe, custom, and practice to follow the SOLAS Convention if it was feasible. And we know it was feasible because after Mr. Nelson's injury, Noah started doing the load tests on gangways that were already in use. And the trial court made no findings at all about whether the initial load test should have been done. And there's no way that this court can say that those findings were clearly erroneous because they didn't make any. And that's a legal issue, as I understand it. And the error is that there was no findings about the failure to do the initial load testing. That was one error. There was no findings at all about destruction of the gangway and making the plaintiff's burden more difficult and what sanctions should have followed from that. And there was nothing at all about the destruction of the notes, if there was an inspection, about presumptions that should have followed from that. The court didn't mention at all about destruction, and the government ignored that issue in its brief. So this is a case where I think it has to be sent back, and I think the court should instruct the trial court that the failure to do an initial load test was any other finding would have been clearly erroneous. I don't have anything to add. All right. Thank you to both sides for your argument today. The matter is submitted.
judges: NGUYEN, MILLER, Montalvo